UNITED STATES DISTRICT COURT DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| DHAVALKUMAR K. PATEL, Petitioner, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| | ) | |
| DAVID WESLING, Acting Field Office | ) | |
| Director, U.S. Immigration and Customs | ) | Case No. 26-12942 |
| Enforcement; | ) | |
| DAVID VENTURELLA, Acting Director, U.S. | ) | |
| Immigration and Customs Enforcement; | ) | |
| MARKWAYNE MULLIN, U.S. Secretary | ) | |
| of Homeland Security; | ) | |
| TODD BLANCHE, Acting U.S. Attorney | ) | |
| General, | ) | |
| | ) | |
| Respondents. | ) | |

## PETITION FOR WRIT OF HABEAS CORPUS

### INTRODUCTION

1. This case challenges the unlawful detention of Dhavalkumar K. Patel, who is currently in the custody of Immigration and Customs Enforcement ("ICE") and believe to be in detention at ICE's facility in Burlington, Massachusetts. Petitioner's supervised release was revoked and his detention was effected on or about June 27, 2026, without notice or opportunity to be heard, on the decision of an individual without authority to do so, without findings required by law, and in violation of agency rules.

2. When it previously released Petitioner from ICE detention under an order of supervision ("OSUP"), ICE found that Petitioner was neither a flight risk nor danger to the

1

community.[1] The relevant considerations have not changed since then; moreover, ICE has made no showing that Petitioner's removal is likely to occur within the reasonably foreseeable future.

3.      On June 27, 2026, Petitioner was at Wallace's Market, the general store that he owns and operates in the small town of Friendship, Maine, when ICE agents re-detained him, effectively revoking the order of supervision. Petitioner was taken first to an ICE facility in Scarborough, Maine, and approximately 4:15 pm that day he was informed that he was being transported to the ICE facility in Burlington, Massachusetts.

4.      Courts in the First Circuit and over a dozen other jurisdictions have found that ICE's revocation of an order of supervision and re-detention of a noncitizen in this manner is unlawful, violating the Due Process Clause of the Fifth Amendment to the U.S. Constitution, the Immigration and Nationality Act and its implementing regulations, the Administrative Procedure Act, and the Supreme Court's *Accardi* doctrine.

5.      Petitioner brings this action for injunctive, habeas, and declaratory relief ordering his immediate release.

## JURISDICTION & VENUE

6.      This Court has subject matter jurisdiction under 28 U.S.C. § 2241 (habeas corpus), the Suspension Clause of the Constitution, and 28 U.S.C. § 1331 (federal question). *See Zadvydas v. Davis*, 533 U.S. 678, 687 (2001) (noting that 28 U.S.C. § 2241 confers

---

[1] *See* 8 C.F.R. § 241.4(d)(1) ("The district director, Director of the Detention and Removal Field Office, or Executive Associate Commissioner may release an alien if the alien demonstrates to the satisfaction of the Attorney General or her designee that his or her release will not pose a danger to the community or to the safety of other persons or to property or a significant risk of flight pending such alien's removal from the United States.").

jurisdiction on the federal courts to hear challenges to the "lawfulness of immigration-related detention.").

7. The U.S. District Court for the District of Massachusetts is the proper venue to hear this petition because Petitioner is, on information and belief, currently detained by ICE within the Commonwealth of Massachusetts.

## PARTIES

8. Dhavalkumar K. Patel is a national of India who is currently detained by ICE and believed to be held at the ICE facility in Burlington, Massachusetts, in the Commonwealth of Massachusetts, at the direction of DHS.

9. Respondent David Wesling is the New England Field Office Director for U.S. Immigration and Customs Enforcement.

10. Respondent David Venturella is the Acting Director for U.S. Immigration and Customs Enforcement.

11. Respondent Markwayne Mullin is the U.S. Secretary of Homeland Security.

12. Respondent Todd Blanche is the Acting United States Attorney General, and, as such, the head of the Department of Justice.

13. All respondents are named in their official capacities. One or more of the respondents is Petitioner's immediate custodian.

## STATEMENT OF BACKGROUND FACTS AND PROCEDURAL HISTORY

14. Petitioner is 34 years old and came to the United States from India in 2010, entering without inspection at the border with Mexico. Petitioner was detained and put into immigration proceedings and, due to missing a court date, was issued an in absentia

removal order in 2011. Petitioner was put on an Order of Supervision and attended regular check-ins with ICE for many years. Prior to his re-detention, he was living in the small coastal town of Friendship, Maine, with his wife and young U.S. citizen child, where he served the community as the owner and operator of the community's one general store, Wallace's Market.

15. No circumstances have changed that make Petitioner a flight risk or danger to the community.

16. Very recently, Petitioner reported to the police that a local youth had behaved in a threatening manner toward him while wielding a large knife. Petitioner was afraid and went, with his wife and young child, to the police to report the incident.

17. Petitioner does not have a passport and has not been able to obtain one; therefore there is not a significant likelihood of removal in the reasonably foreseeable future.

18. Although Petitioner was able to make one call to his wife from the ICE facility in Scarborough, Maine, at approximately 4:15 pm on June 27, 2026, the call ended abruptly after Petitioner said that he was he was being transported to the ICE facility in Burlington, Massachusetts. His family has been unable to make contact with him again, and while as of approximately 8:52 pm, the "ICE Detainee Locator" shows that he is in ICE custody, it does not provide his actual custody location.

## LEGAL FRAMEWORK

19. Under 8 U.S.C. § 1231(a)(2)-(3), a noncitizen subject to a final order of removal may be detained for 90 days (the "removal period") during which removal is to be effected, § 1231(a)(2), or may be released subject to supervision if their removal cannot be timely executed, § 1231(a)(3). Certain noncitizens, including those who are "inadmissible" under

8 U.S.C. § 1181 or whose order of removal was based on violations of status requirements or entry conditions, violations of criminal law, or reasons of national security or foreign policy, may be detained beyond the removal period under 8 U.S.C. § 1231(a)(6), and their detention under that statute for up to six months beyond the final order of removal is presumptively reasonable. *Zadvydas, supra,* 533 U.S. at 699-700. Beyond that six-month limit, however, continued detention is permitted only if there is a significant likelihood of removal occurring within the reasonably foreseeable future: "if removal is not reasonably foreseeable, the court should hold continued detention unreasonable and no longer authorized by statute. In that case, of course, the alien's release may and should be conditioned on any of the various forms of supervised release that are appropriate in the circumstances". *Id.*

20. When, as here, a noncitizen subject to a final order of removal is released, the release is subject to an order of supervision "under regulations prescribed by the Attorney General." 8 U.S.C. § 1231(a)(3)(A)-(D). Those regulations are found at 8 C.F.R. § 241.4, .5(a) and .13. The OSUP itself sets out, among other provisions, a noncitizen's reporting obligations, limitations on travel without prior ICE approval, and a mandate that the non-citizen continue their own efforts to obtain, and assist ICE in its efforts to attain, a travel document for purposes of their removal. *See Funes v. Francis,* 810 F.Supp.3d 472, 493 (S.D. N.Y. 2025).

**An Order of Supervision Can Be Revoked Only in Limited Circumstances, and Only If Specific Procedures Are Followed**

21. As set forth in greater detail below, constitutional safeguards, statutory limitations and regulatory requirements all serve to constrain the government's ability to revoke an order of supervision and re-detain a non-citizen. First, after the initial six months following a

5

final order of removal, any detention (including detention following revocation of an OSUP) must be supported by a reasonable prospect of removal in the reasonably foreseeable future. *Zadvydas, supra,* 533 U.S. at 699–700. Further, the decision to revoke an OSUP and re-detain a non-citizen can only lawfully be made by a limited cohort of government officials. Finally, a non-citizen whose OSUP has been revoked must be given timely notice of the reasons for the decision and an opportunity to respond to those reasons in a meaningful manner and at a meaningful time. The government has met none of these obligations, and Petitioner has been afforded none of the safeguards to which he was legally entitled.

**The Government Has Not and Cannot Meet Its Burden to Demonstrate a Significant Likelihood of Removal in the Reasonably Foreseeable Future**

22.    8 C.F.R. § 241.13(i)(2), which applies to all OSUP revocations other than revocations for violation of the conditions of release under 8 C.F.R. § 241.4(l), provides that "The Service may revoke an alien's release under this section and return the alien to custody if, on account of changed circumstances, the Service determines that there is a significant likelihood that the alien may be removed in the reasonably foreseeable future."[2] By its terms, this regulation requires that the ICE demonstrate some changed circumstances that have created this likelihood – ICE can't merely reevaluate circumstances that may have existed at the time supervised release was granted. The First Circuit, interpreting this regulation, has held that:

> ICE's decision to re-detain a noncitizen like [Petitioner] who has been granted supervised release is governed by ICE's own regulation requiring (1) an

---

[2] "After *Zadvydas,* the Attorney General issued regulations to implement administrative review procedures for those aliens detained beyond the removal period. *See* Continued Detention of Aliens Subject to Final Orders of Removal, 66 Fed. Reg. 56,977 (Nov. 14, 2001) (codified at 8 C.F.R. § 241.13)." *Meighan v. Chertoff,* 2008 WL 1995374, *2.

individualized determination (2) by ICE that, (3) based on changed circumstances, (4) removal has become significantly likely in the reasonably foreseeable future.

*Kong v. United States*, 62 F.4th 608, 619–620 (1st Cir. 2023) (citing 8 C.F.R. § 241.13(i)(2)). In this circumstance, it is clear that the government must demonstrate the likelihood that removal is imminent; it is not the non-citizen's obligation to show the opposite. *See Nguyen v. Hyde*, 788 F. Supp. 3d 144, 150 and n.2 (D. Mass. 2025) (government's argument that it is the non-citizen's burden to point to reasons why his removal is not likely to occur in the reasonably foreseeable future "is improper burden shifting"); *Abuelhawa v. Noem*, 811 F. Supp. 3d 847, 860 (S.D. Tex. 2025) (where it seeks to revoke release on supervision and return a non-citizen to custody on this basis, the "Government bears the burden to show a significant likelihood that the alien may be removed in the reasonably foreseeable future"; ordering non-citizen's release, subject to the terms of preexisting order of supervision, where government failed to prove changed circumstances making imminent removal likely) (collecting cases;); *Escalante v. Noem*, 2025 WL 2206113 (E.D. Tex. Aug. 2, 2025) (ordering non-citizen's release where, upon revoking OSUP, government failed to show a significant likelihood of removal in the reasonably foreseeable future); *Hoac v. Becerra,* No. 2:25-cv-01740-DC-JDP, 2025 WL 1993771, at *4 (E.D. Cal. July 16, 2025) (same); *Hai Thanh Le v. Chesnut,* 2026 WL 809891, *4 (E.D. Cal. Mar. 24, 2026) (collecting cases). Moreover, the government does not satisfy its burden by making conclusory assertions and must instead identify *facts* to support its claim that re-detention was "based on changed circumstances that would show [the non-citizen's] removal to be significantly likely in the reasonably foreseeable future." *Id.* at 150. *See also Abuelhawa*, *supra* at 860 ("the Government fails to meet its

7

burden where it provides only conclusory statements as to the likelihood of removal")
(collecting cases).

23.    When ICE revoked the Petitioner's OSUP and re-detained him, it did so without any
probative evidence that the circumstances which led to the Petitioner's initial release –
the government's inability to effect his removal – had changed, much less that they had
changed such that it was now significantly likely that removal would occur within the
reasonably foreseeable future. As the government did not meet its burden, the revocation
of Petitioner's OSUP and the detention which followed are unlawful and cannot stand.

24.    Moreover, it is not enough that the government be able to demonstrate *after* the
noncitizen has been re-detained that there is a significant likelihood of removal in the
foreseeable future; instead, ICE must consider all of the relevant facts and apply the
factors set out in 8 C.F.R. § 241.13(f) in order to determine this issue *before* an OSUP is
revoked and *before* the noncitizen is again arrested. As the First Circuit explained in
*Kong v. United States,* 62 F.4th 608, 620 n.13:

Section 241.13 governs how ICE should determine whether there is a significant
likelihood of removing a noncitizen in the reasonably foreseeable future. Subsection (f)
details several factors that ICE must consider in making the foreseeability inquiry. See 8
C.F.R. § 241.13(f) ("[ICE's Headquarters Post-order Detention Unit] shall consider all
the facts of the case including, but not limited to, the history of the alien's efforts to
comply with the order of removal, the history of [ICE]'s efforts to remove aliens to the
country in question or to third countries, including the ongoing nature of [ICE]'s efforts
to remove this alien and the alien's assistance with those efforts, the reasonably
foreseeable results of those efforts, and the views of the Department of State regarding
the prospects for removal of aliens to the country or countries in question."). Subsection
(i) applies that reasonable foreseeability test to determining when a noncitizen on
supervised release can be re-detained. See § 241.13(i)(2).

25.    On multiple occasions, this Court has made clear that the likelihood of near-term removal
must be determined by the government *before* it revokes an OSUP and re-detains a

8

noncitizen. In *Munagi v. McDonald,* 813 F. Supp. 3d 225 (D. Mass. 2025), the court ordered the noncitizen released where there was no evidence "showing that ICE made an individualized, *pre-revocation* determination that Munagi was removable in the reasonably foreseeable future". *Id.* at 229 (emphasis supplied). To similar effect is *Huynh v. Wesling*, 2026 WL 183467, *3 (D. Mass. Jan. 26, 2026): "Where ICE is attempting to re-detain a noncitizen, this individualized determination must be conducted prior to re-detention. . . . post-hoc justifications are inadequate"; ordering release) (internal quotation marks and citation omitted). *See also* Gomes-Afonseca v. Lyons, 2026 WL 538167, *2 (D. Mass. Feb. 26, 2026) (same).

26.    Petitioner is not aware of any such pre-revocation, pre-detention determination having been made and, on information and belief, alleges that this simply did not occur. In the absence of a *pre*-revocation determination (supported by sufficient, probative evidence) that changed circumstances made it significantly likely that Petitioner could be removed within the reasonably foreseeable future, the revocation of the OSUP and Petitioner's resulting detention were unlawful, and must be reversed.

**Petitioner's OSUP Was Revoked by A Government Official Not Authorized to Do So and Without the Required Finding that Circumstances Did Not Reasonably Permit Referral of the Case to the Executive Associate Commissioner for Field Operations**

27.    DHS regulations permit only certain officials to revoke an order of supervision: the ICE Executive Associate Commissioner, a field office director, or an official "delegated the function or authority . . . for a particular geographic district, region, or area." *Ceesay v. Kurzdorfer*, 781 F. Supp. 3d 137, 161 (W.D.N.Y. 2025) (citing 8 C.F.R. §§ 1.2, 241.4(l)(2). See, e.g., *Hammouda v. Department of Homeland Security*, Case No. 4:25-cv-2696, 2026 WL 91465, at *5 (N.D. Ohio Jan. 13, 2026). If the officer who revokes

supervised release is without proper delegated authority, the action is ultra vires. *Id.*[3] For a delegated official to have authority to revoke an order of supervision, the delegation order must explicitly say so. *Ceesay v. Kurzdorfer*, 781 F. Supp. 3d at 161 (finding a delegation order that "refers only to a limited set of powers under part 241 that do not include the power to revoke release" insufficient to grant authority to revoke an order of supervision).

28.   Moreover, if the field office director or a delegated official intend to revoke an order of supervision, they must first make findings that "revocation is in the public interest and circumstances do not reasonably permit referral of the case to the Executive Associate Commissioner." 8 C.F.R. § 241.4(l)(2).

29.   Here, Petitioner's OSUP was revoked by without any finding that revocation was in the public interest and that referral to the Executive Associate Director was not possible under the circumstances.

30.   These defects render the decision to revoke Petitioner's OSUP ineffective as a matter of law. *Ceesay, supra,* 781 F. Supp. 3d at 162 ("As a result, this Court cannot conclude that Robinson had the authority to revoke release, finds that Ceesay's release was not lawfully revoked, and holds that he is entitled to release on that basis alone."); *Zhu v. Genalo*, 2025 WL 2452352, at *8 (S.D.N.Y. Aug. 26, 2025) (same); *M.S.L. v. Bostock*, 2025 WL 2430267 (D. Or. Aug. 21, 2025) (releasing habeas petitioner where revocation of an ICE order of supervision was ordered by someone without regulatory authority to do so); *Santamaria Orellana,* 2025 WL 2444087, at *6–8 (same). *See also Rombot, supra,* 296

---

[3] As explained in *Ceesay*, *supra,* the Homeland Security Act of 2002 renamed the position titles listed in § 241.4.

F. Supp. 3d at 387 (revocation of OSUP unlawful where official who made the decision lacked the authority to do so and failed to make "the threshold determination that . . . 'revocation [was] in the public interest and circumstances [did] not reasonably permit referral of the case to the [equivalent of the Executive Associate Commissioner]'", quoting 8 C.F.R. § 241.4(l)(2)).

### Upon Revocation of an Order of Supervision, ICE Must Give a Non-Citizen Notice of the Reasons for Revocation and a Prompt Interview to Respond

31.      As this Court held in *Jiminez v. Cronen*, 317 F. Supp. 3d 626, 654 (D. Mass. 2018), upon revocation of an order of supervision, ICE must give a non-citizen notice of the reasons for revocation and a prompt interview to respond. 8 C.F.R. § 241.4(l)(1):

> [W]hen ICE arrests an alien who has been released on conditions under § 241.4(d)(1), it is required to "notif[y] [her] of the reasons for [the] revocation [and] . . . her return to [ICE] custody," and "afford[ ] [her] an informal interview promptly after . . . her return to [ICE] custody to afford [her] an opportunity to respond to the reasons for revocation stated in the notification.

*See also M.Q. v. United States*, 776 F. Supp. 3d 180, 186–187, 190 n.1 (S.D.N.Y. 2025) (holding that the framework governing discretionary revocation of an OSUP requires notice and an initial informal interview); *You, Xiu Qing,* 321 F. Supp. 3d at 463 ("[e]ven assuming *arguendo* that respondents had the authority to revoke Petitioner's release under § 241.4 . . . they could not detain him without providing him with notice and an informal interview"); *Funes v. Francis, supra,* 810 F. Supp. 3d at 493 ("under § 241.4(*l*), Funes was entitled to 'notice of the reasons for the revocation of her release' and 'an informal interview promptly after . . . her return to custody [that] afford[e]d [her] an opportunity to respond. . . .'"). 8 C.F.R. § 241.13(i)(2)) is to the same effect: "Upon revocation, the alien will be notified of the reasons for revocation of his or her release. The Service will conduct an initial informal interview promptly after his or her return to

Service custody to afford the alien an opportunity to respond to the reasons for revocation stated in the notification." This regulatory requirement parallels the constitutional due process right to notice and an opportunity to respond. *See Mejia v. US Immigration and Customs Enforcement and Removal Operations,* 2026 WL 936066, *6 (D.N.H. Apr. 7, 2026) ("The opportunity to contest detention through an informal interview is not some ticky-tacky procedural requirement; it strikes at the heart of what due process demands.")

32. Here, Petitioner received nothing approaching the process due him under the regulations or the Constitution.

### Violation of 8 C.F.R. §§ 241.4 or 241.13 Renders Re-detention of a Person Released on an OSUP Unlawful

33. ICE, like any agency, "has the duty to follow its own federal regulations." *Haoud v. Ashcroft*, 350 F.3d 201, 205 (1st Cir. 2003) (quoting *Nelson v. I.N.S.,* 232 F.3d 258, 262 (1st Cir. 2000)). And when it fails to do so, the actions which result are unlawful.

34. Unsurprisingly, many courts have held that it is unlawful for ICE to revoke an order of supervision and re-detain a non-citizen without following the procedures set forth in federal regulations at 8 C.F.R. §§ 241.4 and 241.13. As noted, these regulations require that:

- notification of the reasons for revocation be given to the noncitizen (8 C.F.R. § 241.4(l)(1));
- an initial informal interview promptly be provided, affording the non-citizen an opportunity to respond to the reasons for revocation stated in the notification (8 C.F.R. § 241.4(l)(1));
- the decision be made by an authorized individual, and if by a district director, then only upon a determination that revocation was in the public interest and that circumstances did not reasonably permit referral of the case to the equivalent of the Executive Associate Commissioner (8 C.F.R. § 241.4(l)(2)); and
- an individualized determination be made that changed circumstances make it is substantially likely that the noncitizen will be removed in the reasonably foreseeable future (8 C.F.R. §§ 241.13 (i)(2)).

12

35.    Courts have not hesitated to set aside the revocation of an OSUP and resulting re-detention where one or more of these regulatory requirements is not met. *See, e.g., Nguyen v. Hyde*, 788 F. Supp. 3d 144, 152 (D. Mass. 2025); *de Rodriquez v. Hyde*, Civil Action No.: 25-CV-13210-AK, 2026 WL 220416, at *3 (D. Mass. Jan. 28, 2026) ("because Respondents have failed to adhere to their own regulations, and in the process, violated Petitioner's procedural due process rights, the Court orders Petitioner released pursuant to the conditions in her preexisting Order of Supervision"); *Vo v. Lyons,* Case No. 1:25-cv-533, 2026 WL 323133, at *3–4 (D.N.H. Jan. 27, 2026) ("The relevant question is whether ICE complied with the applicable regulations when it revoked Vo's release and returned him to custody"); ("where an immigration regulation is promulgated to protect a fundamental right derived from the Constitution or a federal statute and [ICE] fails to adhere to it, the challenged [action] is invalid)" (citations and internal quotes omitted); *Munagi v. McDonald*, Civil Action No. 25-13175-NMG, 2025 WL 3688023 *3 (D. Mass. Dec. 19, 2025) ("Because ICE violated its own regulations, the revocation of Munagi's OSUP is invalid and his detention is unlawful"); *Rombot v. Souza*, 296 F. Supp. 3d 383, 388 (D. Mass. 2017) ("where an immigration regulation is promulgated to protect a fundamental right derived from the Constitution or a federal statute, like the opportunity to be heard, and [ICE] fails to adhere to it, the challenged [action] is invalid" (citations and quotation marks omitted)); *Hall v. Nessinger*, C.A. No. 25-cv-667-JJM-PAS, 2026 WL 18583, *8–9 (D.R.I. Jan. 2, 2026) (same); *You v. Nielsen*, *supra*, 321 F. Supp. 3d at 463; *Zhu*, ___ F. Supp. 3d at ___, 2025 WL 2452352, at *7–9; *M.S.L. v. Bostock*, No. 6:25-CV-01204-AA, 2025 WL 2430267, at *10–12 (D. Or. Aug. 21, 2025); *Escalante v. Noem*, No. 9:25-CV-00182-MJT, 2025 WL 2491782, at *3 (E.D. Tex. July 18, 2025);

*Hoac v. Becerra*, No. 2:25-cv-01740-DC-JDP, 2025 WL 1993771, at *4 (E.D. Cal. July 16, 2025); *Wing Nuen Liu v. Carter*, Case No. 25-cv-03036-JWL, 2025 WL 1696526, at *2 (D. Kan. June 17, 2025); *M.Q. v. United States*, 776 F. Supp. 3d 180, 186, 190 n.1 (S.D.N.Y. 2025).

36.    As described above, the Respondents failed to meet these obligations, plainly rendering the decision to revoke Petitioner's OSUP and re-detain him unlawful and unenforceable.

**Due Process Governs Decisions to Revoke an Order of Supervision and Re-detain a Non-Citizen**

37.    In addition to the requirements imposed by statute and by regulation, revocation of an order of supervision and any resulting detention are governed by the Due Process Clause of the Fifth Amendment. "The Due Process Clause applies to all persons within the United States, including aliens, whether their presence here is lawful, unlawful, temporary, or permanent." *Zadvydas v. Davis*, 533 U.S. 678, 693 (2001). "Freedom from imprisonment—from government custody, detention, or other forms of physical restraint—lies at the heart of the liberty that Clause protects." *Id.* at 690 (2001).

***Substantive Due Process prohibits revocation of the OSUP and Petitioner's resulting re-detention when it is unlikely that removal will occur within the reasonably foreseeable future***

38.    Under the substantive due process doctrine, a restraint on liberty, such as revocation of a non-citizen's order of supervision and resultant detention, is only permissible if it serves a "legitimate nonpunitive objective." *Kansas v. Hendricks*, 521 U.S. 346, 363 (1997). The Supreme Court has recognized only two legitimate objectives of immigration detention: preventing danger to the community or preventing flight prior to removal. *See*

14

*Zadvydas v. Davis*, 533 U.S. 678, 690–692 (discussing constitutional limitations on civil detention).

39. As the Supreme Court has held, the justification for holding a noncitizen on the ground of preventing flight is weak or nonexistent where, as here, removal within a reasonable period seems unlikely. *Id*. at 690. And there has been no assertion by the government that petitioner presents a danger to the community. Thus, under *Kansas v. Hendricks*, *supra*, petitioner's continued detention is unconstitutional.

### *Revocation of the OSUP and Petitioner's resulting re-detention without notice and an opportunity to be heard violates Procedural Due Process*

40. In addition to the protections afforded by substantive due process, "[p]rocedural due process imposes constraints on governmental decisions which deprive individuals of liberty," such as the decision to revoke a non-citizen's order of supervision. *Mathews v. Eldridge*, 424 U.S. 319, 332 (1976). "The fundamental requirement of [procedural] due process is the opportunity to be heard at a meaningful time and in a meaningful manner." *Id*. at 333. *Mathews v. Eldridge*, 424 U.S. 319, 333, instructs courts to balance three factors to determine whether procedural due process is satisfied: (1) the private interest at issue; (2) the risk of erroneous deprivation of that interest through the procedures used, and the probable value, if any, of additional procedural safeguards; and (3) the government's interest, including fiscal and administrative burdens that additional or substitute procedural requirements entail.

41. The first factor, the private interest at issue, favors Petitioner. "Freedom from imprisonment—from government custody, detention, or other forms of physical

15

restraint—lies at the heart of the liberty that [the Due Process] Clause [of the Fifth Amendment] protects." *Zadvydas v. Davis*, 533 U.S. 678, 690.

42. The second factor, the risk of erroneous deprivation of liberty and the probable value of procedural safeguards, also favors Petitioner. To safeguard against erroneous deprivations of liberty, the relevant regulations provide only a limited number of reasons for which an order of supervision can be revoked. The regulations also specify who may lawfully revoke the order and the procedures that must be followed when doing so, including giving notice and an opportunity to be heard. Respondents violated those legal requirements here, leaving the risk of erroneous deprivation of liberty extremely high. Requiring Respondents to give notice and an opportunity to respond prior to revoking an order of supervision is of great value because it reduces the probability of needless detention of a person such as Petitioner, who is neither dangerous nor a flight risk.

43. The third factor, the government's interest, also favors Petitioner. Providing notice and an opportunity to respond to a person at risk of revocation of an order of supervision requires little effort and expense. Further, when the government ignores the law that ensures notice and an opportunity to respond to a person at risk of revocation of an order of supervision, it is more likely to waste limited financial and administrative resources on unnecessary detention of people who are neither flight risks nor dangerous. This waste drags down the efficiency of the entire immigration system. And because the government must also spend resources defending against a habeas corpus petition in federal court to compel Respondents to comply with law, requiring Respondents to instead provide notice and a meaningful opportunity to respond prior to revoking an order of supervision reduces fiscal and administrative burdens on the government.

44. In sum, all three of the *Mathews* factors favor the Petitioner, and revoking Petitioner's order of supervision without providing notice and a meaningful opportunity to respond violated his procedural due process rights.

### ICE's Revocation of Petitioner's OSUP Was Final Agency Action Under, and Was Made in Violation of, the Administrative Procedure Act

#### *The revocation of the OSUP was a "final agency action"*

45. The Administrative Procedure Act (the "APA") authorizes judicial review of final agency action. 5 U.S.C. § 704.

46. Final agency actions are those (1) that "mark the consummation of the agency's decision-making process" and (2) "by which rights or obligations have been determined, or from which legal consequences will flow." *Bennett v. Spear*, 520 U.S. 154, 178 (1997).

47. ICE's revocation of an order of supervision is a final agency action subject to this Court's review.

48. The revocation here marked the consummation of ICE's decision-making process regarding Petitioner's custody.

49. The revocation was also an action by which rights or obligations have been determined or from which legal consequences flowed because it led ICE to detain Petitioner in violation of his rights under the Constitution, statute, and regulation.

#### *The decision to revoke the OSUP was contrary to law, and must be set aside*

50. Under the APA a court shall "hold unlawful and set aside agency action . . . found to be . . . not in accordance with law" or "contrary to constitutional right, power, privilege, or immunity." 5 U.S.C. § 706(2)(A), (B).

51.    As described above, the revocation of Petitioner's order of supervision was not in accordance with the INA and its implementing regulations governing who may lawfully revoke an order of supervision, the limited circumstances in which revocation properly may occur, and the procedures which must be followed and the findings which must be made for a lawful revocation. Also as described above, the OSUP's revocation violated Petitioner's substantive and procedural due process rights under the Fifth Amendment.

52.    The decision to revoke the OSUP must, accordingly, be held unlawful and set aside.

### *The decision to revoke the OSUP was arbitrary and capricious and must be set aside*

53.    Under the APA, a court shall "hold unlawful and set aside agency action . . . found to be arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law," 5 U.S.C. § 706(2)(A), and also if the agency acted "without observance of procedure required by law." 5 U.S.C. § 706(2)(D).

54.    Respondents' revocation of Petitioner's order of supervision was arbitrary and capricious, an abuse of discretion and not in accordance with procedure required by law because it violated statute, regulation, and the Constitution, as described above.

55.    An agency decision that "runs counter to the evidence before the agency" is also arbitrary and capricious. *Motor Vehicle Mfrs. Ass'n v. State Farm Mut. Auto. Ins.*, 463 U.S. 29, 43 (1983).

56.    Respondents' decision to revoke Petitioner's order of supervision ran counter to the evidence before the agency that Petitioner would comply with a demand to appear for removal without detention. Petitioner was determined at the time of release not to pose a flight risk and has never violated a condition of his order of supervision, and no new facts or changed circumstances suggest he would.

18

57.    The revocation also was arbitrary and capricious because it "failed to consider important aspects of the problem". *Dep't of Homeland Sec. v. Regents of the Univ. of Cal.*, 140 S. Ct. 1891, 1910 (2020).

58.    First, Respondents failed to consider the serious constitutional concerns raised by revoking Petitioner's order of supervision without notice and opportunity to respond.

59.    Second, Respondents failed to consider the increased administrative burden to the agency caused by revoking the order of supervision of Petitioner, who is neither a flight risk nor a danger to the community and whose removal is not significantly likely to occur within the reasonably foreseeable future, including financial and administrative costs incurred by the agency due to unnecessary detention.

60.    Third, Respondents failed to consider reasonable alternatives to revoking Petitioner's order of supervision that were before the agency, such as simply continuing release under the order of supervision and scheduling a future time and date to appear for removal. This alternative would have vindicated the government's interests in effectuating a removal order and saved it the expense of detention, which was not needed to assure Petitioner's appearance.

61.    Because the decision to revoke the OSUP was arbitrary and capricious, the APA requires that it be set aside.

### The *Accardi* Doctrine Requires Agencies to Follow Internal Rules

62.    Under the *Accardi* doctrine, agencies must follow not only governing regulations, but also their own procedures, rules, and instructions. *See United States ex rel. Accardi v. Shaughnessy*, *supra*, 347 U.S. at 268 (setting aside an order of deportation where the Board of Immigration Appeals failed to follow procedures governing deportation

19

proceedings); *see also Morton v. Ruiz*, 415 U.S. 199, 235 (1974) ("Where the rights of individuals are affected, it is incumbent upon agencies to follow their own procedures . . . even where the internal procedures are possibly more rigorous than otherwise would be required."); *Nelson v. I.N.S.,* 232 F.3d 258, 262 (1st Cir. 2000) (same).

63.     *Accardi* is not "limited to rules attaining the status of formal regulations." *Montilla v. INS*, 926 F.2d 162, 167 (2d Cir. 1991). Courts must also reverse agency action for violation of unpublished rules and instructions to agency officials. See *Morton v. Ruiz*, 415 U.S. 235 (affirming reversal of agency denial of public assistance made in violation of internal agency manual); *U.S. v. Heffner*, 420 F.2d 809, 812 (4th Cir. 1969) (under *Accardi*, reversing decision to admit evidence obtained by IRS agents for violating instructions on investigating tax fraud).

### Petitioner's Immediate Release Is the Appropriate Remedy

64.     Other sessions of this Court have concluded that where the government fails to follow its own regulations in revoking release, the resulting detention is unlawful and the non-citizen's immediate release must be ordered. *See, e.g., Munagi v. McDonald, supra*, 813 F.Supp.3d at 229 (ordering release where the ICE failed to make an individualized, pre-revocation determination that Munagi was removable in the reasonably foreseeable future); *Huynh v. Wesling, supra*, 2026 WL 183467 at *3 (same); Gomes-Afonseca v. Lyons, *supra*, 2026 WL 538167 at *2 (same); *de Rodriquez v. Hyde*, Civil Action No.: 25-CV-13210-AK, 2026 WL 220416, at *3 (D. Mass. Jan. 28, 2026) ("because Respondents have failed to adhere to their own regulations, and in the process, violated Petitioner's procedural due process rights, the Court orders Petitioner released pursuant to the conditions in her preexisting Order of Supervision"); *Rombot v. Souza*, *supra*

20

(ordering release for failure to follow regulations). Many other federal courts across the country have likewise ordered release where ICE failed to comply with its own regulations. See, e.g., *Orellana v. Baker*, No. 25-1788-TDC, 2025 WL 2444087, at *1, 8 (D. Md. Aug. 25, 2025) (granting immediate release to non-citizen whose OSUP was revoked in violation of ICE regulations); *M.S.L. v. Bostock*, No. 6:25-cv-1204-AA, 2025 WL 2430267, at *10 (D. Or. Aug. 21, 2025) (non-citizen entitled to release where OSUP was revoked by an official to whom that authority had not been delegated); *Ceesay v. Kurzdorfer*, 781 F. Supp. 3d 137, 163 (W.D.N.Y. 2025) (ordering release where government breached its promise to provide non-citizen an opportunity to prepare for an orderly departure); *Abuelhawa v. Noem*, *supra*, 811 F. Supp. 3d at 864 (ordering immediate release where government had not demonstrated a significant likelihood of removal in the reasonably foreseeable future).

### Count One: Violation of Governing Regulations

65. Petitioner realleges all paragraphs above as if fully set forth here.

66. Respondents violated 8 C.F.R. § 241.13(i)(2), in that they did not determine, on account of changed circumstances, that there is a significant likelihood that the petitioner may be removed in the reasonably foreseeable future.

67. Respondents also violated 8 C.F.R. § 241.4(l)(1) when they revoked Petitioner's OSUP without notifying him of the reasons for revocation and affording [him/her/them] an initial informal interview promptly after his return to custody to afford petitioner an opportunity to respond to the reasons for revocation stated in the notification.

68. Respondents also violated 8 C.F.R. § 241.4(l)(2) and acted ultra vires in that the revocation or the order of supervision was without first making findings that "revocation

21

is in the public interest and circumstances do not reasonably permit referral of the case to the Executive Associate Commissioner."

69. Petitioner's detention is therefore illegal and [he/she/they] should be immediately released.

**Count Two: Violation of the Fifth Amendment to the U.S. Constitution; Substantive Due Process**

70. Petitioner realleges all paragraphs above as if fully set forth here.

71. When ICE issued Petitioner an order of supervision, it found that he is neither a danger to the community nor a flight risk.

72. When Respondents revoked the order of supervision, no change in circumstances warranted the order's revocation and ICE had not secured the travel documents necessary for removal.

73. Petitioner's detention therefore does not bear a reasonable relationship to the two permissible purposes of immigration detention: preventing danger to the community or flight prior to removal.

74. Because Respondents had no legitimate, non-punitive objective in revoking Petitioner's order of supervision and detaining him, Petitioner's detention violates substantive due process under the Fifth Amendment to the U.S. Constitution.

**Count Three: Violation of the Fifth Amendment to the U.S. Constitution; Procedural Due Process**

75. Petitioner realleges all paragraphs above as if fully set forth here.

76. By denying Petitioner notice of the reasons for revoking the OSUP and a meaningful opportunity to respond to those reasons, the Respondents have violated Petitioner's rights to due process under the Fifth Amendment to the United States Constitution.

## Count Four: Violation of Administrative Procedure Act, 5 U.S.C. § 706(2)(A), (B) Contrary to Law and Constitutional Right

77. Petitioner realleges all paragraphs above as if fully set forth here.

78. The decision to revoke the OSUP constitutes final agency action.

79. Under the APA a court shall "hold unlawful and set aside agency action . . . found to be . . . not in accordance with law" or "contrary to constitutional right, power, privilege, or immunity." 5 U.S.C. § 706(2)(A), (B).

80. The revocation of Petitioner's order of supervision was not in accordance with the INA and its implementing regulations, and violated Petitioner's substantive and procedural due process rights under the Fifth Amendment.

81. As a result, the decision to revoke the OSUP (and the re-detention resulting from that decision) must be "h[e]ld unlawful and set aside" by this Court.

## Count Five: Violation of the Administrative Procedure Act, 5 U.S.C. § 706(2)(A) Arbitrary and Capricious

82. Petitioner realleges all paragraphs above as if fully set forth here.

83. Under the APA, a court shall "hold unlawful and set aside agency action . . . found to be arbitrary [or] capricious." 5 U.S.C. § 706(2)(A).

84. The decision to revoke the OSUP was arbitrary and capricious because it:

    a.    Violated applicable law;

    b.    Ran counter to the evidence before the agency; and

23

c.      Failed to consider important aspects of the problem.

85.    Because the decision to revoke Petitioner's order of supervision was arbitrary and

capricious, it must be held unlawful and set aside.

**Count Six: Violation of the *Accardi* Doctrine**

86.    Petitioner realleges all paragraphs above as if fully set forth here.

87.    Under the *Accardi* doctrine, an agency action that violated agency procedures, rules, or

instructions must be set aside. *See United States ex rel. Accardi v. Shaughnessy*, 347 U.S.

260.

88.    Respondents violated agency regulations governing:

a.      who may properly revoke an order of supervision;

b.      the findings necessary to support that decision; and

c.      the procedures to be followed when making that decision.

d.       when it revoked Petitioner's order.

89.    Under *Accardi*, Respondents' revocation of the order of supervision must be set aside for

violating agency procedures, rules, or instructions.

**PRAYER FOR RELIEF**

WHEREFORE, Petitioner requests that this Court:

a.      Exercise jurisdiction over this matter;

b.      Enjoin Petitioner's removal or transfer outside the jurisdiction of this Court
        and the United States pending its adjudication of this petition;

c.      Declare that Petitioner's detention violates the Due Process Clause of the
        Fifth Amendment, the INA and implementing regulations, the APA, and
        the *Accardi* doctrine;

d.      Order Petitioner's immediate release in the state of Maine during normal
        business hours, in a well-populated area that is within a quarter mile of
        public transportation and not more than 30 miles from Petitioner's
        residence; with all personal documents (including without limitation

24

25

Petitioner's driver's license, passport, work authorization and other immigration documents) and belongings (including without limitation Petitioner's clothing, cell phone, keys, and wallet); without conditions such as ankle monitors or tracking devices; with attire appropriate to the weather conditions; and after having given at least six hours' advance notice to Petitioner's counsel of the time and place of Petitioner's release;

e.    Award Petitioner costs and reasonable attorneys' fees; and

f.    Order such other relief as this Court may deem just and proper.

Respectfully submitted,

/s/ Audrey Richardson

Audrey Richardson (BBO # 630782)
Greater Boston Legal Services
197 Friend Street
Boston, MA 02114
arichardson@gbls.org
617-603-1644
*Attorney for Petitioner*

Dated: June 27, 2026

Certificate of Service

I, Audrey Richardson, certify that the proceeding document has been filed electronically through the ECF system and that it will be served electronically to all parties, who are registered ECF participants, including the attorney of record for the Respondents, through the ECF systems Notice of Electronic Filing on this day, June 27, 2026.

/s/ Audrey R. Richardson